# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| MCLEODUSA TELECOMMUNICATIONS SERVICES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> QWEST CORPORATION and QWEST COMMUNICATIONS CORPORATION, <br><br> Defendants. | No. C 06-0035-MWB <br><br> **MEMORANDUM OPINION AND ORDER REGARDING FIRST CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

_____

This matter comes before the court pursuant to the following motions: Defendant Qwest's April 2, 2007, Motion For Summary Judgment On Plaintiff McLeod's Count I and Qwest's Counterclaim Count IX And For Partial Summary Judgment On Liability On Qwest's Counterclaims XIV And XV (docket no. 56); plaintiff McLeodUSA's May 16, 2007, Cross-Motion For Summary Judgment (docket no. 60); and defendant Qwest's July 20, 2007, Amended Motion To Strike Inadmissible Testimony Of Tami Spocogee (docket no. 73). The last motion may be briefly resolved, because on October 5, 2007, Qwest filed a Withdrawal Of Qwest's Motion To Strike Inadmissible Testimony Of Tami Spocogee, in which Qwest represented that McLeodUSA had produced the information on which Ms. Spocogee's challenged testimony was based. Therefore, the last motion will be denied as moot.

Although the cross-motions for summary judgment filed April 2, 2007 (docket no. 56) and May 16, 2007 (docket no. 60) are still hotly contested, the court finds that they may also be resolved comparatively briefly. First, however, the court must identify the matters at issue in the cross-motions.

In its motion, Qwest seeks summary judgment or partial summary judgment on the following claims: Count I of McLeodUSA's Complaint, which alleges breach of contract by Qwest in failing to pay for access services provided by McLeodUSA in connection with non-wireless 8XX calls; Count IX of Qwest's Counterclaim, which alleges overpayment by Qwest of McLeodUSA's tariff charges for access services for 8XX calls; Count XIV of Qwest's Counterclaim, which alleges "money had and received" by McLeodUSA as a result of McLeodUSA's improper insertion of itself into the routing of wireless-originated calls to Qwest 8XX numbers from customers of third-party wireless companies and, consequently, improper collection by McLeodUSA of access charges for such calls; and Count XV of Qwest's Counterclaim, which alleges overpayment by Qwest of McLeodUSA's state tariff charges as a result of McLeodUSA's improper insertion of itself into the routing of the same wireless calls at issue in Count XIV.[1] In its cross-motion, McLeodUSA seeks summary judgment on Count I of Qwest's Complaint and Counts IX through XII and XIV of McLeodUSA's Counterclaim. The additional counterclaims at issue in McLeodUSA's cross-motion are the following: Count X of Qwest's Counterclaim, which alleges "money had and received" by McLeodUSA for access charges for 8XX calls routed by McLeodUSA to Qwest via Local Interconnection Service (LIS) facilities; Count XI of Qwest's Counterclaim, which seeks declaratory judgment that McLeodUSA has improperly collected access charges for 8XX calls under McLeodUSA's filed tariffs; and Count XII of Qwest's Counterclaim, which alleges violations of the Federal

---

[1] McLeodUSA contends, *inter alia*, that Qwest has improperly identified Counterclaim Count XV as one of the claims at issue in Qwest's Motion For Summary Judgment, because Qwest repeatedly states in its motion that the part of its motion challenging charges for wireless 8XX access services addresses *interstate* calls, but Counterclaim Count XV addresses *intrastate* calls. Because McLeodUSA asserts that Qwest intended to challenge charges under McLeodUSA's federal tariff, the appropriate counterclaims at issue must be Counterclaim Counts XIII and XIV, not XIV and XV. The parties' disagreement about what counterclaims are at issue in their cross-motions for summary judgment is but one of the many problems presented by those motions.

Communications Act and equivalent state laws by McLeodUSA by improperly routing 8XX calls to Qwest via Local Interconnection Service (LIS) facilities.

In the months following the filing of the cross-motions for summary judgment, the parties filed numerous and extensive briefs and submitted voluminous appendices, all pursuant to extended or modified briefing schedules. Indeed, the last supporting brief on these motions was not filed until November 2, 2007. In the course of the briefing, the parties' arguments and factual allegations underwent substantial metamorphoses. As a result, the parties' arguments are fraught with internal inconsistencies, and the facts in the record are, to say the least, uncertain. Although the parties requested oral arguments on their cross-motions for summary judgment, the court does not believe that oral arguments would dispel the inconsistencies in the parties' written arguments or untangle the uncertainties in the record. Therefore, the court has not set oral arguments on the cross-motions for summary judgment and will rule upon them on the written submissions.

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Any party may move for summary judgment regarding "all or any part" of the claims asserted in a case. FED. R. CIV. P. 56(a), (b) (allowing a claimant to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party," and allowing a defending party to move for summary judgment "at any time"). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005)

("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). On the present record, the court finds that summary judgment is not appropriate for either party on any claim, counterclaim, or issue raised in the cross-motions for summary judgment now before the court. This is so, because there are numerous genuine issues of material fact on all such claims, counterclaims, and issues. To be sure, there may be questions of law in this case that the court may ultimately be called upon to decide. However, after careful review of the record, the court finds that even such questions of law are subject to genuine issues of material fact.

The genuine issues of material fact barring summary judgment for any party on any claim, counterclaim, or issue involved in the present cross-motions for summary judgment include, but certainly are not limited to, the following: which of McLeodUSA's federal tariffs was in place at what time; the nature of the calls at issue, including whether some or all of them are wireless or non-wireless; whether the calls involved or should have involved "Feature Group B" access, "Feature Group D" access, or "Toll Free Data Base" access; whether McLeodUSA was "required" to route the calls in the manner it did by the CIC 0110 code returned in the SMS/800 "dip"; whether Qwest or third parties are responsible for the CIC 0110 code returned in the SMS/800 "dip" for any, some, or all of the 8XX calls at issue; whether Qwest negligently failed to prevent unauthorized CIC 0110 codes from being returned in the SMS/800 "dip"; whether the calls were interLATA or intraLATA or "local"; whether the calls were "local" or "toll" calls; and whether the calls involved "access services" or "transit services." As a consequence of these and other genuine issues of material fact, there are also genuine issues of material fact as to whether charges for the calls were governed by McLeodUSA's tariffs (state or federal), the ICAs (Interconnection Agreements) between the parties, or some equitable doctrine, such as "constructive ordering."

The inability of the court to resolve any issues in the pending motions is as unsatisfactory to the court as it will likely be to the parties. However, this result is a product of the record and arguments with which the court has been presented and the constraints on the court at summary judgment to determine only whether a dispute about a material fact is genuine, not to determine the truth of the matter. *See Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996) (explaining the court's role in resolving a motion for summary judgment).

THEREFORE,

1. Defendant Qwest's April 2, 2007, Motion For Summary Judgment On Plaintiff McLeod's Count I and Qwest's Counterclaim Count IX And For Partial Summary Judgment On Liability On Qwest's Counterclaims XIV And XV (docket no. 56) is **denied**;

2. Plaintiff McLeodUSA's May 16, 2007, Cross-Motion For Summary Judgment (docket no. 60) is **denied**; and

3. Defendant Qwest's July 20, 2007, Amended Motion To Strike Inadmissible Testimony Of Tami Spocogee (docket no. 73) is **denied as moot**.

**IT IS SO ORDERED.**

**DATED** this 19th day of December, 2007.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA